IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSE ZAVALA-FLORES,<br><br>           Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>           Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO VACATE [1]**<br><br>Case No. 2:13-cv-00060-DN<br><br>District Judge David Nuffer |

**BACKGROUND**

On November 18, 2012, Mr. Zavala-Flores pled guilty to the charge of illegal reentry into the United States, in violation of 8 U.S.C. § 1326. He was sentenced to 18 months in prison followed by 36 months of supervised release. He did not appeal conviction. In January 2013, Mr. Zavala-Flores timely filed the Section 2255 Motion to Set Aside, Vacate, or Correct Sentence ("Motion to Vacate" or "Motion") now under review.[1]

In compliance with an order[2] to respond to the Motion, the prosecution filed a response in which it argues that none of Mr. Zavala-Flores's asserted grounds for the Motion provide a valid basis for relief.[3] For the reasons discussed below, the prosecution is correct and Mr. Zavala-Flores's Motion to Vacate is DENIED.

---

[1] Motion to Vacate, Set Aside or Correct Sentence By A Person In Federal Custody ("Motion"), docket no. 1, file January 22, 2013.

[2] Order, docket no. 2, entered February 8, 2013.

[3] Government's Response to Movant's Motion to Set Aside, Vacate, or Correct Sentence ("Response") at 17, docket no. 3, filed March 29, 2013.

BACKGROUND ............................................................................................................................ 1
FACTS ......................................................................................................................................... 2
DISCUSSION .............................................................................................................................. 3
    Grounds 1 and 2—"Coerced Confession" and "Unlawful Arrest" ..................................... 3
    Ground 3—Enhancement of Sentence ................................................................................ 5
    Ground 4—Supervised Release .......................................................................................... 7
    Ground 5—Previous Deportation Proceeding ................................................................... 8
        The Deportation Proceeding Did Not Prejudice Mr. Zavala-Flores ....................... 8
        A Section 212(c) Waiver Is Not Appropriate ...................................................... 11
    Ground 6—"Forced" Plea .................................................................................................. 13
    Ineffective Assistance of Counsel .................................................................................... 14
CONCLUSION and ORDER ................................................................................................... 15

# FACTS

In 1991, Mr. Zavala-Flores was admitted as a lawful permanent resident in the United States.[4] In 1997, he pled guilty to a federal drug trafficking offense and was sentenced to serve 33 months in prison, followed by 3 years of supervised release.[5]

In 1998, the INS charged Mr. Zavala-Flores with being deportable from the United States because he was a lawful permanent resident who had been convicted of an aggravated felony drug offense.[6] After a hearing, an immigration judge ordered Mr. Zavala-Flores to be deported.[7] Mr. Zavala-Flores filed an appeal of the deportation order, but later withdrew his appeal.[8] In 1999, he was physically removed from the United States.[9]

---

[4] Response at 3. The United States notes that Mr. Zavala-Flores may have been incorrectly admitted as a lawful permanent resident because he had not been present in the United States in 1982, as required by the federal law pursuant to which Mr. Zavala-Flores was admitted.

[5] Exhibit 1 to Response.

[6] Exhibit 3 to Response.

[7] Exhibit 7 to Response.

[8] Exhibit 8 to Response.

[9] Exhibit 2 to Response.

In 2012, Mr. Zavala-Flores was present in the United States illegally and pled guilty to the charge of illegal reentry under 8 U.S.C. § 1326.[10] Although sentencing guidelines indicated an appropriate range for prison time at 57-71 months, Mr. Zavala-Flores was sentenced to only 18 months of incarceration followed by 36 months of supervised release.[11] He did not appeal that conviction, but in January 2013, Mr. Zavala-Flores timely filed the instant Motion to Vacate now under review.

## DISCUSSION

It has been over 18 months since Mr. Zavala-Flores was sentenced to 18 months in prison. Mr. Zavala-Flores's incarceration status is currently unknown to the court; however, even if he has been released from prison, his petition is not mooted because he is still subject to supervised release and thus remains in custody for habeas purposes.[12]

Mr. Zavala-Flores asserts the following grounds for bringing his Section 2255 Motion. Each of the asserted grounds will be discussed in turn, noting Mr. Zavala-Flores's argument (if any), along with the prosecution's response to the argument. Because Mr. Zavala-Flores proceeds pro se, his arguments will be liberally construed.[13]

### Grounds 1 and 2—"Coerced Confession" and "Unlawful Arrest"

With respect to Ground 1, Mr. Zavala-Flores argues that his conviction was obtained by use of a "coerced confession."[14] With respect to Ground 2, Mr. Zavala-Flores argues that his

---

[10] *United States v. Zavala-Flores*, Case No. 2:12-cv-00540.

[11] Exhibit 9 to Response.

[12] *United States v. Robles*, 546 Fed. App'x. 751, 754 n.3 (10th Cir. 2013) (unpublished) ("We also note that Robles' release does not moot his petition because he is subject to supervised release and thus remains 'in custody' for habeas purposes." (citing *United States v. Cervini,* 379 F.3d 987, 989 n. 1 (10th Cir.2004))).

[13] *United States v. Viera*, 674 F.3d 1214, 1216 n. 1 (10th Cir. 2012).

[14] Motion at 4.

conviction was obtained by use of evidence acquired pursuant to an "unlawful arrest."[15] He provides no further argument or support for either of these assertions that would violate the Fourth Amendment.

The prosecution argues there is no proof that Mr. Zavala-Flores's confession was coerced or that his conviction was obtained pursuant to an unlawful arrest.[16] The United States argues that "by pleading guilty, the defendant has waived the right to challenge any potential Fourth Amendment violations."[17] "[D]efendant gave a sworn statement under oath and signed a waiver of his Miranda rights;"[18] "declined to answer some questions while agreeing to answer others," which shows he "felt free to decline to answer incriminating questions" and was therefore not coerced to confess anything;[19] and initialed or signed each page of the signed statement, which contained questions and waivers of rights "written in both the Spanish and English languages."[20]

The prosecution is correct. "[I]t is well established that a voluntary and unconditional guilty plea waives all non-jurisdictional defenses."[21] "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."[22]

---

[15] Motion at 4.

[16] Response at 6-8.

[17] Response at 7 (citing *United States v. Salazar*, 323 F.3d 852, 856 (10th Cir. 2003)).

[18] Response at 7 (citing Att. 10, Defendant's Confession).

[19] *Id.*

[20] *Id.*

[21] *United States v. Salazar*, 323 F.3d 852, 856 (10th Cir. 2003).

[22] *Id.* (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).

Here, Mr. Zavala-Flores entered his plea knowingly, intelligently, and voluntarily.[23] Therefore, Tenth Circuit and Supreme Court case law prohibits him from now raising claims that he was deprived of constitutional rights through an alleged "coerced confession" or "illegal arrest." Moreover, Mr. Zavala-Flores does not set forth specific facts that support his claims that he suffered constitutional deprivation and there is not any evidence in the record showing that his claims have any merit. Accordingly, Grounds 1 and 2 fail.

### Ground 3—Enhancement of Sentence

Mr. Zavala-Flores argues that the district court erred by enhancing the sentence in consideration of a prior, 15-year old conviction. He argues that "[a]ccording to federal court rules a conviction which is older than 10 years shall be used only to prove a fact or demostrate [sic] a [sic] credibility."[24] Mr. Zavala-Flores provides no legal authority for this statement, so it is difficult to know which "federal court rules" he is referring to. But he is likely referring to the Sentencing Guidelines at § 4A1.2(e), which provide that sentences "imposed within ten years of the defendant's commencement of the instant offense is counted,"[25] and "[a]ny prior sentence not within the time periods specified above is not counted."[26] However, Mr. Zavala-Flores fails to recognize that this same section of the Sentencing Guidelines explicitly states that sentences exceeding 13 months *are* counted as enhancements in certain circumstances.[27]

---

[23] Transcript of November 19, 2012 Proceedings at 9:10, attached as Exhibit 9 to Response.

[24] Motion at 5.

[25] United States Sentencing Guidelines Manual § 4A1.2(e)(2) (2014), *available at* http://www.ussc.gov/guidelines-manual/2014/2014-ussc-guidelines-manual.

[26] *Id.* at § 4A1.2(e)(3).

[27] *Id.* at § 4A1.2(e)(1) ("Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.").

The prosecution argues that a separate section of the Sentencing Guidelines "provide[s] for a 16 level enhancement for drug trafficking convictions for which the term of imprisonment exceeds 13 months[,]"[28] and since Mr. Zavala-Flores's earlier conviction was eligible for a 16-level enhancement, it properly triggered such an enhancement. According to the prosecution, "[t]he Tenth Circuit has found that there is no time limitation for prior criminal convictions that trigger the sixteen level enhancement under the reentry guideline."[29]

The prosecution is correct. In *Torres-Duenas*, the defendant had been convicted of aggravated kidnapping nearly twenty years before, and was later charged with illegal reentry, much like Mr. Zavala-Flores.[30] The defendant in *Torres-Duenas* pled guilty to the illegal reentry charge and, during sentencing, the district court enhanced the defendant's sentence 16 levels for the prior kidnapping conviction which had occurred nearly twenty years before.[31] The defendant appealed to the Tenth Circuit.[32] In affirming the district court's decision to enhance the sentence, the Tenth Circuit explained that the Sentencing Guidelines establish a base offense level of 8 for illegal reentry, and increase this by 16 levels if the defendant previously was deported, or unlawfully remained in the United States, after being convicted of a felony that is a crime of violence.[33] Because Torres-Duenas had unlawfully remained in the United States after being convicted of the aggravated kidnapping charge—a felony that is a crime of violence—the enhancement was appropriate, even though the prior conviction was almost two decades old.[34]

---

[28] Response at 8 (citing U.S.S.G. § 2L1.2(b)(1)(A)(i)).

[29] Response at 9 (citing *United States v. Torres-Duenas*, 461 F.3d 1178 (10th Cir. 2006) (finding 20-year old conviction was eligible for 16 level enhancement)).

[30] *United States v. Torres-Duenas*, 461 F.3d 1178, 1179 (10th Cir. 2006).

[31] *Id.*

[32] *Id.* at 1180.

[33] *Id.*

[34] *Id.* at 1181-82.

Mr. Zavala-Flores's case is nearly identical to *Torres-Duenas*. The only difference is that Mr. Zavala-Flores's prior conviction was a drug trafficking offense rather than a crime of violence. But under the Sentencing Guidelines, a 16-level enhancement is appropriate, provided the drug trafficking offense carries a sentence greater than 13 months.[35] The record shows that Mr. Zavala-Flores's prior drug trafficking offense carried a sentence of 33 months. Therefore, it was appropriate to enhance Mr. Zavala-Flores's sentence based on his prior conviction.[36] It does not make a difference that the prior conviction was old.[37]

### Ground 4—Supervised Release

The next argument Mr. Zavala-Flores makes is that the district court erred in imposing supervised release because he is a prisoner who was going to be deported after imprisonment.[38] He argues that under 18 U.S.C. § 3583, a court ordinarily should not impose a term of supervised release where the defendant is a deportable alien who likely will be deported after imprisonment.[39] He cites to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, arguing that it amended 18 U.S.C. § 3563(b) "to add a new discretionary condition of probation with respect to deportation."[40]

In opposition, the prosecution points out that "it is true that in 2011, the United States Sentencing Guidelines were amended at section 5D1.1(C) to indicate that supervised release is 'ordinarily' not appropriate in cases where it is 'likely' that a non-citizen defendant will be

---

[35] *See* id. at 1180 (quoting United States Sentencing Guidelines Manual § 2L1.2(b)(1)(A), which provides for a 16-level enhancement "[i]f the defendant previously was deported, or unlawfully remained in the United States, after— (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; [or] (ii) a crime of violence[.]").

[36] Judgment in a Criminal Case, attached as Exhibit 1 to Response.

[37] *Torres-Duenas*, 461 F.3d at 1181-82 (explaining that the relevant section of the Sentencing Guidelines, unlike other sections of the Guidelines, does not contain an "explicit time restriction on the application of convictions").

[38] Motion at 5.

[39] Motion at 6.

[40] Id.

7

deported after imprisonment."[41] But the decision to impose supervised release is discretionary. The prosecution points out that at the time 5D1.1(C) was amended, commentary was added to the Sentencing Guidelines which states that supervised release may be appropriate in situations where a prisoner would be deported after imprisonment if the "court determines that it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case."[42]

> Here, the court was well within its discretion to mandate supervised release because:
>
> (1) Mr. Zavala-Flores had been previously prosecuted for a serious offense and then illegally reentered the United States, and therefore the supervised release period was imposed to deter Mr. Zavala-Flores from committing future crime, and also to protect the public;
>
> (2) Mr. Zavala-Flores received a generous downward sentencing departure,[43] which allowed Mr. Zavala-Flores to avoid prolonged incarceration; and
>
> (3) Mr. Zavala-Flores acknowledged in his sentencing hearing on November 19, 2012 that supervised release was appropriate.[44]

In exchange for less prison time, the district court used its discretion to require a reasonable period of supervised release following incarceration. This is appropriate.

### Ground 5—Previous Deportation Proceeding

### The Deportation Proceeding Did Not Prejudice Mr. Zavala-Flores

Mr. Zavala-Flores believes that his re-entry conviction should be dismissed because he was not represented by counsel in his 1998 proceedings before a federal immigration judge.

---

[41] Response at 9.

[42] Response at 9 (citing U.S.S.G. § 5D1.1(C) (2011)).

[43] The low end of Mr. Zavala-Flores's sentencing range was 57 months. He was sentenced to 18 months.

[44] Transcript of November 19, 2012 Proceedings at 8:8-11, attached as Exhibit 9 to Response.

According to Mr. Zavala-Flores, it is a violation of the Fifth Amendment not to have counsel in such a proceeding.[45] He cites to *United States v. Campos-Asencio* in support of this argument.[46]

The prosecution disagrees, arguing that "because immigration proceedings are civil in nature, and aliens are not entitled to an appointed attorney in their immigration hearings . . . the defendant cannot assert that a lack of representation by counsel at his immigration hearing violates due process."[47] The prosecution argues that Mr. Zavala-Flores "has neither the right to appointed counsel, nor is there any evidence that he was precluded from being heard during his immigration court hearing."[48]

The prosecution is correct. In *Campos-Asencio*, the defendant challenged the use of a prior deportation "on the grounds that he was not represented by counsel at the deportation hearing, was not informed of his right to counsel and of the availability of free legal help, and did not waive counsel."[49] The district court denied the defendant's argument under Fifth Circuit precedent that prohibited collateral attacks on deportation orders.[50] However, on appeal, the Fifth Circuit reversed and remanded,[51] explaining that a recent Supreme Court case had just "authorized collateral attacks on deportation orders in prosecutions under 8 U.S.C. § 1326."[52] The Fifth Circuit noted that the "record before this Court at the present time is so sparse that this Court cannot even determine whether Campos in fact had counsel at his 1985 deportation

---

[45] Motion at 5.

[46] Motion at 7. The citation Mr. Zavala-Flores provides for *Campos Asencio* is "(1987, ca5 Tex)." The correct citation is *United States v. Campos-Asencio*, 822 F.2d 506 (5th Cir. 1987).

[47] Response at 10.

[48] *Id.*

[49] *Campos-Asencio*, 822 F.2d at 508.

[50] *Id.* at 509.

[51] *Id.* at 510.

[52] *Id.* at 509 (citing *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987)).

hearing."[53] It gave instructions to the district court to determine "whether Campos was in fact represented by counsel at his 1985 deportation hearing; if not, whether Campos was informed of his right to representation and given a reasonable chance to exercise that right; whether Campos competently waived that right; and whether these deprivations, if established, prejudiced Campos by rendering the deportation hearing fundamentally unfair or denying Campos judicial review under the new *Mendoza-Lopez* standard."[54]

Therefore, although the Fifth Circuit reversed the district court's decision, *Campos-Asencio* does not stand for the proposition that it is a violation of the Fifth Amendment not to have counsel in a deportation proceeding. Rather, *Campos-Asencio* stands for the simple proposition that *Mendoza-Lopez* instituted a new standard that requires a defendant to be *informed* of his right to representation and given a reasonable *chance to exercise* that right, and if deprived of the right, the deprivation must *prejudice* the defendant to the point of rendering the deportation hearing fundamentally unfair. Moreover, *Campos-Asencio* unequivocally declares that even "[i]f the alien can establish such errors [so fundamental that they may functionally deprive the alien of judicial review], the prior deportation *will not be overturned*, but the Government may not use that deportation to increase the punishment for illegal reentry."[55] Thus, even if Mr. Zavala-Flores were able to show his deportation proceeding "fundamentally unfair," the very case Mr. Zavala-Flores cites would not allow the prior deportation to be overturned; instead, the Government would merely be barred from using the deportation to increase the punishment under his illegal reentry proceeding.

---

[53] *Campos-Asencio*, 822 F.2d at 510.

[54] *Id.*

[55] *Id.* at 509.

But Mr. Zavala-Flores cannot show that his deportation proceeding was fundamentally unfair or prejudiced him in any way under Tenth Circuit case law. The only argument Mr. Zavala-Flores makes in support of Ground 5 is that the absence of counsel, by itself, rendered the proceeding unconstitutional; he does not argue that he was not informed of his statutory right to obtain his own counsel at his expense,[56] nor does he set forth any facts or argument showing how he was actually prejudiced by the absence of counsel. This does not satisfy the standard in the Tenth Circuit. In the Tenth Circuit, like the Fifth Circuit, "there is no right to *appointed* counsel in deportation proceedings, and the fact that an alien is without counsel is not considered a denial of due process, *if he does not show that he was prejudiced thereby*."[57]

The prosecution is correct that there is no evidence that Mr. Zavala-Flores's immigration hearing was fundamentally unfair or that he was prejudiced by the absence of counsel.

### A Section 212(c) Waiver Is Not Appropriate

Mr. Zavala-Flores also argues that he is eligible for a "212(c) waiver" pursuant to the Supreme Court's holding in *St. Cyr*.[58] Mr. Zavala-Flores does not explain how the facts of his case support this contention.

According to *St. Cyr*, Section 212(c) of the Immigration and Nationality Act ("INA") "has been interpreted by the Board of Immigration Appeals (BIA) to authorize any permanent resident alien with 'a lawful unrelinquished domicile of seven consecutive years' to apply for a *discretionary* waiver from deportation."[59] However, due to several statutory changes described

---

[56] *See id.* ("Aliens also have a statutory right to counsel, although not at Government expense, and I.N.S. regulations provide that aliens be told of this right and given a list of free legal services." (citing 8 U.S.C. § 1252(b)(2) and 8 C.F.R. § 242.1(c) (1987))).

[57] *Havel v. I.N.S.*, 25 F.3d 1057, *1 (10th Cir. 1994) (unpublished) (quoting *Trench v. I.N.S.*, 783 F.2d 181, 183 (10th Cir. 1986) (internal quotation marks omitted) (emphasis added).

[58] Motion at 7 (citing *Immigration and Naturalization Svc. v. St. Cyr*, 533 U.S. 289 (2000)).

[59] *St. Cyr*, 533 U.S. 289, 295 (2000) (emphasis added).

more fully in *St. Cyr*, Section 212(c) has been narrowed significantly to "reduce[] the size of the class of aliens eligible for such discretionary relief."[60] "So narrowed, that class does not include anyone previously 'convicted of any aggravated felony.'"[61] The Supreme Court went on to explain that even though the narrowing statutes limited the relief available, the relief was not eliminated entirely.[62] Thus, the holding in *St. Cyr* was that "§ 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect."[63]

Here, Mr. Zavala-Flores seeks § 212(c) relief but does not articulate how he is entitled to such relief.[64] Liberally construing the section of his motion entitled "APPLY FOR 212 (C) WAIVER," it seems that Mr. Zavala-Flores is arguing that since he was not allowed to seek § 212(c) relief from his deportation proceedings in 1998, those proceedings were invalid. And because the underlying proceedings were invalid, Mr. Zavala-Flores apparently believes, his more recent illegal reentry proceedings were also invalid.[65]

Mr. Zavala-Flores's argument fails, however, because he is not entitled to collaterally attack the underlying proceedings of his illegal reentry charge unless he meets the requirements of 8 U.S.C. § 1326(d). According to §1326,

> [A]n alien may not challenge the validity of [a prior] deportation order . . . unless the alien demonstrates that—

---

[60] *Id.* at 297.

[61] *Id.* (internal citations omitted).

[62] *Id.* at 300 (stating that at least "some 'judicial intervention in deportation cases' is unquestionably 'required by the Constitution' [specifically, the "Suspension Clause" found in Article I, § 9, cl. 2].").

[63] *St. Cyr*, 533 U.S. 289, 326 (2000).

[64] Motion at 6 (arguing that the "illegal re-entry conviction should be dismissed").

[65] *Id.*

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.[66]

Mr. Zavala-Flores cannot make this showing. Not only does he fail to include in his motion any facts or argument showing that any of these elements are met, the prosecution points out that Mr. Zavala-Flores did not exhaust his administrative remedies. Although he filed an appeal of the 1998 deportation decision for drug trafficking, he withdrew the appeal in March 1999.[67] The withdrawal of the appeal ended his chance to exhaust administrative remedies. There is no indication that he was deprived of judicial review of those proceedings or that the entry of the order was fundamentally unfair, as required under § 1326(d).

Therefore, because § 1326(d) prohibits Mr. Zavala-Flores from challenging his drug trafficking proceedings which underlie his illegal reentry charges, he cannot assert the drug trafficking proceedings were unfair because he did not receive § 212(c) relief.

### Ground 6—"Forced" Plea

Finally, Mr. Zavala-Flores argues that his illegal reentry conviction should be dismissed because his attorney "forced him to plead guilty because he told him that it was the best to do."[68] Mr. Zavala-Flores provides no further explanation, and there is no reason to believe that his attorney "forced" him to accept the plea agreement. In fact, the record shows otherwise. During the November 19, 2012 sentencing hearing, Mr. Zavala-Flores stated that he understood the nature of the charge, his right to plead not guilty, his right to have a jury trial, and his right to be

---

[66] 8 U.S.C. § 1326(d).

[67] Response at 3-4 (citing to BIA Order, attached as Exhibit 8 to Response).

[68] Motion at 5.

represented by counsel.[69] Most relevant to Mr. Zavala-Flores's current argument, he admitted that no one had threatened or pressured him to plead guilty.[70] Mr. Zavala-Flores entered the plea knowingly, intelligently, and voluntarily.[71] Therefore, there is no merit to Mr. Zavala-Flores's argument that his attorney "forced" him to plead guilty.

### Ineffective Assistance of Counsel

Although Mr. Zavala-Flores has not directly raised an ineffective assistance of counsel argument, he indirectly suggests it. For that reason, and because pro se litigants' pleadings are construed liberally, a brief analysis of that claim is warranted.

To establish ineffective assistance of counsel, the defendant must demonstrate that (1) his counsel's performance was deficient, and that, (2) as a result of those deficiencies, the defendant was prejudiced.[72] The burden is on the defendant to demonstrate that his attorney's performance was unreasonable under prevailing professional norms.[73] To demonstrate prejudice, the second prong of the *Strickland* test, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[74]

Mr. Zavala-Flores has not shown that his counsel's performance was deficient in any respect or that he was prejudiced in any way by his proceedings. Accordingly, there is no reason to find that Mr. Zavala-Flores was subject to ineffective assistance of counsel.

---

[69] Transcript of November 19, 2012 Proceedings at 5:2-8:24, attached as Exhibit 9 to Response.

[70] Transcript of November 19, 2012 Proceedings at 8:2-4, attached as Exhibit 9 to Response.

[71] Transcript of November 19, 2012 Proceedings at 9:10, attached as Exhibit 9 to Response.

[72] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[73] *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).

[74] *Strickland*, 466 U.S. at 694.

## CONCLUSION AND ORDER

Because "the motion and the files and records of the case conclusively show that prisoner is entitled to no relief,"[75] no evidentiary hearing is necessary. Further, Mr. Zavala-Flores has failed to show that his Motion to Vacate has any grounds upon which it could be granted under Section 2255. Therefore,

IT IS HEREBY ORDERED Mr. Zavala-Flores's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody[76] is DENIED.

The Clerk shall close the case.

Dated May 8, 2015.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[75] 28 U.S.C. § 2255(b).

[76] Docket no. 1, filed January 22, 2013.